# Labaton
# Sucharow

Michael P. Canty
Partner
212 907 0863  direct
212 907 0700  main
212 883 7063  fax
mcanty@labaton.com

New York Office
140 Broadway
New York, NY 10005

October 17, 2022

**VIA ECF**

The Honorable William F. Kuntz
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *In re Telefonaktiebolaget LM Ericsson Sec. Litig.*, No. 1:22-cv-01167-WFK-LB

Dear Judge Kuntz:

      I write on behalf of Lead Plaintiff Boston Retirement System ("Lead Plaintiff") in the above captioned action in response to Defendants' letter requesting a pre-motion conference (the "Letter" or "Ltr.," ECF No. 40), concerning Defendants' anticipated motion to dismiss the Amended Class Action Complaint (the "Complaint," cited as "¶_"), ECF No. 39. Defendants' Letter introduces a number of purported challenges to falsity and scienter in connection with Lead Plaintiff's claims against Telefonaktiebolaget LM Ericsson ("Ericsson") and the Individual Defendants, Börje Ekholm, Carl Mellander, and Xavier Dedullen.[1] However, as set forth below, Lead Plaintiff has adequately pled the elements of a § 10(b) claim at this stage.

## I.    Background

      Defendant Ericsson is a multinational telecommunications company based in Sweden and operating in various countries, including Iraq. ¶¶ 69, 79. From 2011 to 2018, Ericsson earned over $1.9 billion in Iraq alone. ¶ 82. Ericsson touted this success and its growth in the Middle East. These statements (the "ME Business Statements")[2] were false and misleading because – unbeknownst to investors – Defendants concealed the true reasons for growth, including: bribing key customers and making illegal payments to ISIS.[3] ¶¶ 98-129. During the same period, the SEC and DOJ investigated Ericsson's corrupt business practices. ¶¶ 92-95. Thereafter, Defendants made false and misleading statements (the "Anti-Corruption Program Statements")[4] concerning the Company's expanded compliance protocols in response to the government's investigation. *See* ¶¶ 96-97; 133-139. Ultimately, Ericsson entered into a Deferred Prosecution Agreement (the

---

[1] Defendants allude to a loss causation challenge, but conspicuously do not address the argument in their letter, nor could they, because the Complaint's well-pled allegations plainly "link the defendant's purported material misstatements or omissions with the harm ultimately suffered." *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 163 (S.D.N.Y. 2008).

[2] *See* Misstatements 1-4, ¶¶ 193-206.

[3] Defendants knew that widespread bribery, terrorist payments, kickbacks, and slush funds drove Ericsson's business in Iraq. ¶¶ 98-126, 240.

[4] *See* Misstatements 5-7, ¶¶ 207-214.

"DPA") with the DOJ, pleading guilty for illegal conduct in five *specific* countries. ¶¶ 84, 140-145. Thereafter, Defendants misled investors as to their compliance with the DPA (the "FCPA Violation Statements")[5] while concealing known bribery and ISIS funding in Iraq. ¶¶ 151-164.

## II. The Complaint Alleges Materially False and Misleading Statements and Omissions

*ME Business Statements.* Defendants claim that supposedly curative disclosures concerning the DOJ and SEC investigations render the ME Business Statements inactionable. Ltr. at 2. However, Defendants' inadequate disclosures fail to set forth any information revealing Ericsson's corrupt conduct in Iraq. Instead, Defendants unsuccessfully cobble together vague disclosures and claim investors somehow knew of Ericsson's illegal bribes and payments to ISIS. But, investors were wholly unaware of Defendants' illegal conduct, as demonstrated by, *inter alia*, analysts' shock when the truth was revealed and the DOJ's reopening of its investigation into the Company for violating the DPA disclosure requirements. ¶¶ 175, 180, 185. The best Defendants can offer is Ericsson's disclosure that illegal conduct was taking place in "at least five countries." ¶ 144. Yet, this vague disclosure actually led investors to believe Iraq was not at issue. ¶ 207. Knowledge of illegal conduct in other regions cannot, and does not, equate to full disclosure of worse FCPA violations in a different country.[6] Further, Defendants take an overly narrow view of their disclosure duties, claiming there is no duty to disclose unadjudicated wrongdoing. Ltr. at 2. Here, Defendants ignore that disclosure may be required "[e]ven when there is no existing independent duty to disclose information." *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014) ("once a company speaks on an issue or topic, there is a duty to tell the whole truth"). Here, Defendants affirmatively chose to speak in detail about its business in Iraq and purported FCPA compliance, thereby invoking a "duty to tell the whole truth." *Id.* Finally, despite Defendants' arguments to the contrary, their omissions were unquestionably material to investors because they resulted in the government initiating a criminal action against the Company; a nearly one billion dollar fine; and substantial corporate reform requirements all of which significantly impacted Ericsson's reputation in the market. Ltr. at 2; *see* ¶ 185 ("[T]he persistent uncertainty . . . and insufficient disclosure . . . likely makes Ericsson uninvestable").

*Actionable Anti-Corruption Program Statements.* Defendants cherry-pick and mischaracterize these statements as "too general" for investors to rely on. Ltr. at 2. To the contrary, the Complaint alleges far more robust statements that were of particular importance to investors in context due to the severity of Ericsson's illegal terrorist involvement and billion dollar criminal penalty. For example, shortly after the start of the SEC and DOJ investigations, Defendants stated: "to ensure compliance with legal and regulatory requirements . . . Ericsson has

---

[5] *See* Misstatements 8-15, ¶¶ 215-233.

[6] Defendants' reliance on *In re MRU Holdings Securities Litigation*, is misplaced. 769 F. Supp. 2d 500, 510 (S.D.N.Y. 2011). It cannot be said that disclosure of a "challenging macroeconomic environment" (¶ 205) equates to full disclosure of the risk that Ericsson may fund terrorist organizations in order to advance its business.

adopted internal rules," and went on to detail each new program adopted to closely comply with the FCPA. ¶ 208. In the context of Ericsson's past violations, investors were understandably concerned with the status of, and enhancements to, Ericsson's compliance efforts in a way that is wholly distinguishable from the cases Defendants' letter attempts to analogize to. ¶¶ 155-156. Here, "the failure to disclose then-ongoing and serious [FCPA] violations would cause a reasonable investor to make an overly optimistic assessment of the risk." *Jinkosolar*, 761 F.3d at 251.

   ***FCPA Violation Statements.*** Defendants again ignore their duty to disclose the "whole truth" upon speaking on an issue. *Id.* at 250. For example, after entering into the DPA, Defendant Ekholm stated "[t]his settlement puts an end to a long and wide-ranging process," and "[w]e're now able to move forward" with no mention of the known illegal conduct in Iraq. ¶¶ 98, 222. Courts routinely hold that such statements are actionable. *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 240 (2d Cir. 2016) ("so-called half-truths . . . will support claims for securities fraud."). Moreover, statements pertaining to corruption during ongoing government investigations are actionable, even without a duty to disclose unadjudicated wrongdoing. *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 659-60 (S.D.N.Y. 2017) (finding statements actionable when "about bribery and corruption specifically" and made as "the public [] learned of the vast bribery revelations").

**III. Lead Plaintiff Has Adequately Pled Scienter**

   Defendants' individualized assessment of each inference of scienter is insufficient and further renders their anticipated motion to dismiss futile. Ltr. at 3. The Supreme Court is clear: courts must consider "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). In challenging actual knowledge, Defendants ignore the Supreme Court's instruction and attempt to isolate the Complaint's well-pled allegations. At Ericsson's direction, Simpson Thacher prepared an internal report on Ericsson's corrupt practices in Iraq which involved 28 witness interviews and culminated in a 79-page report. ¶ 99. Thereafter, Defendant Ekholm admitted that he knew of the fraudulent conduct in Iraq and made his own materiality determination to withhold the information from the market. ¶ 240. These facts unquestionably favor a sufficient showing of "conscious behavior."

   Finally, because the Complaint sufficiently alleges a 10(b) claim, Lead Plaintiff's 20(a) claim should also be upheld.

The Honorable William F. Kuntz
Page 4

Respectfully submitted,


*/s/ Michael P. Canty*
Michael P. Canty