# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
:
:
:
:
:
:
:
IN RE TELEFONAKTIEBOLAGET LM      :     Case No. 1:22-cv-01167-WFK-LB
ERICSSON SECURITIES LITIGATION.    :     **ORAL ARGUMENT REQUESTED**
:
:
:
:
:
---------------------------------------------------------------x


## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

Robert J. Giuffra, Jr.
David M.J. Rein
Jacob G. Singer
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel: 212-558-4000
Fax: 212-558-3558
giuffrar@sullcrom.com
reind@sullcrom.com
singerja@sullcrom.com

*Counsel for Defendants Telefonaktiebolaget
LM Ericsson, Börje Ekholm, Carl Mellander,
and Xavier Dedullen*

March 10, 2023

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ..............................................................1

ARGUMENT .................................................................................3

I.    PLAINTIFF'S OPPOSITION CONFIRMS ITS FAILURE TO PLEAD ANY ACTIONABLE MISREPRESENTATION OR OMISSION ......................................3

    A.    The MEA Business Statements Are Not Actionable ................................................3

    B.    Plaintiff Cannot Avoid the Many Second Circuit Decisions Holding That Statements Indistinguishable From the Policy Statements Are Not Actionable ................................................................4

    C.    The Opposition Confirms the FCPA Settlement Statements Were Not False ...........................................................................6

II.    THE OPPOSITION CONFIRMS THAT PLAINTIFF'S ALLEGATIONS DO NOT SUPPORT A STRONG INFERENCE OF SCIENTER ...............................7

CONCLUSION ................................................................................10

*Page(s)*

**Cases**

*Africa* v. *Jianpu Technology Inc.*,
    No. 21 Civ. 1419 (JMF), 2022 WL 4537973 (S.D.N.Y. Sept. 28, 2022) ..................................4

*Amaya* v. *Ballyshear LLC*,
    295 F. Supp. 3d 204 (E.D.N.Y. 2018) .......................................................................9

*Arkansas Public Employees Retirement System* v. *Bristol-Myers Squibb Co.*,
    28 F.4th 343 (2d Cir. 2022) ......................................................................................2

*In re Bank of America AIG Disclosure Securities Litigation*,
    980 F. Supp. 2d 564 (S.D.N.Y. 2013) .......................................................................4

*In re Braskem S.A. Securities Litigation*,
    246 F. Supp. 3d 731 (S.D.N.Y. 2017)....................................................................4, 6

*City of Pontiac Policemen's & Firemen's Retirement System* v. *UBS AG*,
    752 F.3d 173 (2d Cir. 2014)............................................................................ *passim*

*City of Warwick Municipal Employees Pension Fund* v. *Rackspace Hosting, Inc.*,
    No. 17 Civ. 3501 (JFK), 2019 WL 452051, (S.D.N.Y. Feb. 5, 2019)..................................6–7

*Das* v. *Rio Tinto PLC*,
    332 F. Supp. 3d 786 (S.D.N.Y. 2018) .......................................................................8

*Dekalb Cnty. Employees' Retirement System* v. *Controladora Vuela Compania De
    Aviacion, S.A.B. de C.V.*,
    No. 15 Civ. 1337 (WHP), 2016 WL 3685089 (S.D.N.Y. July 6, 2016)..................................4

*In re Electrobras Securities Litigation*,
    245 F. Supp. 3d 450 (S.D.N.Y. 2017).......................................................................9

*Fogel* v. *Vega*,
    759 F. App'x 18 (2d Cir. 2018) ...............................................................................5

*Francisco* v. *Abengoa, S.A.*,
    No. 15 Civ. 6279 (ER), 2022 WL 3902852 (S.D.N.Y. Aug. 30, 2022) ..............................7–8

*IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund* v. *Royal Bank of
    Scotland Group, PLC*,
    783 F.3d 383 (2d Cir. 2015)....................................................................................4

*Menora Mivtachin Insurance Ltd.* v. *International Flavors & Fragrances Inc.*,
    No. 19 Civ. 7536 (NRB), 2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021)..............................3, 8

*Meyer* v. *Jinkosolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014)...................................................................................................7

*Plumber & Steamfitters Local 773 Pension Fund* v. *Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) ....................................................................................................5

*Salim* v. *Mobile Telesystems PJSC*,
    No. 19 Civ. 1589 (AMD), 2021 WL 796088 (E.D.N.Y. Mar. 1, 2021) .............................9–10

*Schiro* v. *Cemex, S.A.B. de C.V.*,
    396 F. Supp. 3d 283 (S.D.N.Y. 2019)....................................................................................3

*Singh* v. *Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019)................................................................................................5, 6

*In re VEON Ltd. Securities Litigation*,
    No. 15 Civ. 8672 (ALC), 2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017) ........................3–4, 8

*In re Vivendi Universal, S.A. Securities Litigation*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011)....................................................................................7

## PRELIMINARY STATEMENT

Plaintiff seeks to turn the U.S. Department of Justice's ("DOJ") determination that Defendant Telefonaktiebolaget LM Ericsson ("Ericsson") breached a 2019 deferred prosecution agreement ("DPA") into securities fraud.[1] This DPA breach concerned delayed disclosures to the DOJ about conduct by Ericsson and some of its subsidiaries' employees or agents in China and Djibouti, Ericsson's failure to timely produce certain documents located in Sweden, and the failure of Ericsson's then-outside counsel to make sufficient disclosures to the DOJ about conduct in Iraq. This breach did not involve allegations against the Individual Defendants here or misstatements to investors in Ericsson American Depository Shares ("ADS"), or touch on securities at all. Notably, the DOJ has not charged the Company with any wrongdoing in Iraq.

Plaintiff's Opposition confirms that the Court should dismiss the Amended Complaint with prejudice as a matter of law for three independent reasons:

*First*, in challenging Defendants' general statements about Ericsson's business in the Middle East and Africa ("MEA Business Statements") and descriptions of the Company's policies and controls ("Policy Statements") for failure to disclose purported misconduct in Iraq, Plaintiff cannot surmount the settled rule that "companies do not have a duty 'to disclose uncharged, unadjudicated wrongdoing.'" *City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*, 752 F.3d 173, 183–84 (2d Cir. 2014) (failure to disclose involvement in tax evasion by U.S. customers not actionable). Nor can Plaintiff distinguish the law in this Circuit consistently

---

[1] On March 2, 2023, Ericsson agreed to plead guilty to the same FCPA violations that it previously admitted in the DPA, which violations did not involve Iraq, and to pay a penalty of $206,728,848. (Ex. 53.) The plea filings reflect that Ericsson expressly instructed its outside counsel to disclose an internal Iraq investigation to the DOJ prior to entering into the DPA, but that outside counsel then omitted "evidence of possible misconduct" in Iraq when making disclosures to the DOJ. (Ex. 53 at A-1-7.) "Ex. _" refers to exhibits to the Declarations of David M.J. Rein, dated December 16, 2022, and March 10, 2023 (Dkt. 49 & 52).

holding substantively identical statements not actionable under the securities laws, because such statements are "'too general to cause a reasonable investor to rely upon them.'" *Id.* at 183. Plaintiff also cannot premise its securities fraud claims on optimistic or hopeful statements such as "[w]e're now able to move forward" (Amended Complaint ("AC") (Dkt. 39) ¶ 222) when reporting on the DPA (the "FCPA Settlement Statements"). Defendants never guaranteed investors that Ericsson would not face future enforcement activity, but instead repeatedly warned investors of future enforcement risks, including that Ericsson was subject to Foreign Corrupt Practice Act ("FCPA") and other investigations. (*See* Ex. 1 (summarizing Ericsson's warnings about risks of non-compliance with anti-corruption laws).)

*Second*, admittedly unable to allege that the Individual Defendants had a motive to commit securities fraud, Plaintiff must plead particularized facts evidencing that each Individual Defendant actually intended to defraud ADS investors or engaged in "'highly unreasonable' behavior" or "'an extreme departure from the standards of ordinary care.'" *Ark. Pub. Emps. Ret. Sys.* v. *Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022). Plaintiff comes nowhere close to meeting its exacting burden under the Private Securities Litigation Reform Act of 1995. Abandoning its theory that Iraq was a "core operation" for Ericsson, Plaintiff impermissibly speculates that, because Iraq was "dangerous," Defendants must have known of "corrupt practices and the funding of terrorists" in that country. (Opp. 21–22.) Neither of Plaintiff's two "confidential witnesses" connects any Individual Defendant to information evidencing that they knew that any of their challenged statements were false.

*Third*, Plaintiff's Opposition fails entirely to rebut the showing in Defendants' opening brief (*see* Def. Br. 24–25) that Plaintiff has not sufficiently pled loss causation, including by failing to explain why Ericsson's ADS price did not decline until the day *after* the first purported

corrective disclosure date, February 15, 2022.  (Opp. 24.)

## ARGUMENT

## I.  PLAINTIFF'S OPPOSITION CONFIRMS ITS FAILURE TO PLEAD ANY ACTIONABLE MISREPRESENTATION OR OMISSION.

### A.  The MEA Business Statements Are Not Actionable.

Even though Defendants specifically disclosed sales *declines* in the MEA region in each of 2016, 2017 and 2018 (Def. Br. 11), Plaintiff mischaracterizes the MEA Business Statements as "tout[ing] . . . growth in Iraq and the Middle East" (Opp. 2).  Plaintiff claims that these statements were false because the "Company's growth" was "attributable to its corrupt business practices in Iraq."  (Opp. 9.)  But statements attributing Ericsson's MEA performance to "many contributing parts" (AC ¶ 201) were at least as generic as those in securities fraud cases that were dismissed (*see* Def. Br. 11–14).  Plaintiff recognizes that companies have "no duty to disclose 'unadjudicated wrongdoing,'" but says this settled law does not apply here because Defendants "put the source of their supposed success, or growth, in the Middle East at issue." (Opp. 2, 9.)  Yet Plaintiff has no response to the extensive line of cases in this Circuit consistently holding that attributions of growth to broad factors, such as "organic growth and acquisitions," are "far too generalized" to create a duty to disclose uncharged misconduct.  *Menora Mivtachin Ins. Ltd.* v. *Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at *17–18 (S.D.N.Y. Mar. 30, 2021), *aff'd*, 54 F.4th 82 (2d Cir. 2022); *see Schiro* v. *Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 297 (S.D.N.Y. 2019) (attributing growth to "expansion projects" and "solid asset base" "far too generic").  Defendants' general statements are nothing like the specific statements in the cases on which Plaintiff relies (Opp. 9–10), which squarely put undisclosed misconduct at issue.[2]

---

[2] *See In re VEON Ltd. Sec. Litig.*, 2017 WL 4162342, at *1, *6 (S.D.N.Y. Sept. 19, 2017) (statements such as "'sales and marketing efforts' in Uzbekistan resulted in increased [] subscribers

In any event, Ericsson's *entire* business in Iraq alleged in the Complaint comprised *only 0.7%* of its global revenues during 2011 to 2019, which Plaintiff does not contest. (Def. Br. 12 n.6.) "[A] misstatement related to less than 5% of a financial statement carries the preliminary assumption of immateriality." *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund* v. *Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 390 (2d Cir. 2015).[3] Plaintiff also cannot overcome that, when making the MEA Business Statements, Ericsson repeatedly warned that it might "fail to comply with [its] corporate governance standards" and face future investigations in the countries in which it did business, which included Iraq. (Def. Br. 13–14; *see* Ex. 1; Ex. 56 at 9.) Plaintiff asserts that these warnings made no specific "mention of Iraq or ISIS." (Opp. 11.) Where, as was true here, "'there is disclosure that is broad enough to cover a specific risk, the disclosure is not misleading simply because it fails to discuss the specific risk.'" *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 579 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014).

**B.      Plaintiff Cannot Avoid the Many Second Circuit Decisions Holding That Statements Indistinguishable From the Policy Statements Are Not Actionable.**

In their Opening Brief (*see* Def. Br. 14–16), Defendants pointed to numerous cases in this Circuit holding that a public company's descriptions of its internal controls, including codes of conduct, were not actionable because such statements are "'too general to cause a reasonable

---

and revenues" necessitated "further disclosure" because results actually secured by unlawful payments to President's daughter); *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 741, 758 (S.D.N.Y. 2017) (attributing price of "critical raw material" representing half of company's costs to "market forces" misleadingly omitted that the price was "substantially due to [] bribery").

[3] Plaintiff cannot evade its pleading burden by asserting that materiality is strictly "reserved for the finder of fact" (Opp. 10), because "'the materiality hurdle remains a meaningful pleading obstacle.'" *Dekalb Cnty. Employees' Ret. Sys.* v. *Controladora Vuela Compania De Aviacion, S.A.B. de C.V.*, 2016 WL 3685089, at *3 (S.D.N.Y. July 6, 2016). Plaintiff tries to distinguish *Africa* v. *Jianpu Technology Inc.*, 2022 WL 4537973, *8 (S.D.N.Y. Sept. 28, 2022), which held that "properly reported income that is . . . improperly obtained[] is insufficient to impose Section 10(b) liability," on the ground that the improper income was allegedly not a "material source of [the company's] success." (Opp. 10 n.5.) That is no different than Plaintiff's allegations here.

investor to rely upon them.'"  *UBS*, 752 F.3d at 178, 183, 186 (statement that bank "prioritized

'adequate diversification of risk'" and "avoidance of undue concentrations" not actionable, even

though bank lost $48 billion on its concentrated mortgage holdings).

        In response, Plaintiff claims that the Policy Statements "were far more detailed"

than in *Singh* v. *Cigna Corp.* (Opp. 12), where the Second Circuit affirmed the dismissal of

securities fraud claims over statements concerning "Cigna's commitment to regulatory

compliance," even though it "experienced a series of compliance failures."  918 F.3d 57, 60–61

(2d Cir. 2019).  Just like Ericsson (*see* Ex. 2 at 5–6), however, Cigna described "policies and

procedures to comply with applicable requirements" and noted "significant resources" allocated

to compliance.  918 F.3d at 60.  Similarly, in *Fogel* v. *Vega*, even though a company engaged in a

bribery scheme "under the direction of" its general counsel, the Second Circuit affirmed the

dismissal of a securities fraud claim over statements that the company "maintained strict

compliance" with applicable law and does not "tolerate, permit, or engage in bribery."  759 F.

App'x 18, 20, 23–24 (2d Cir. 2018).  Likewise, notwithstanding a $200 billion money-laundering

scandal, the Second Circuit affirmed the dismissal of securities fraud claims over a bank's

statements that it "takes the steps necessary to comply with internationally recognised standards,

including Know Your Customer procedures," and has procedures for "customer due diligence,

reporting . . . and communications."  *Plumber & Steamfitters Loc. 773 Pension Fund* v. *Danske

Bank A/S*, 11 F.4th 90, 97, 103 (2d Cir. 2021).[4]  These cases are directly on point here.

        Plaintiff argues that Defendants' warnings to investors of potential compliance

---

[4] Ericsson did not undertake a duty to disclose any uncharged employee wrongdoing by making
the Policy Statements.  (Opp. 14.)  This purported distinction is meaningless because NASDAQ
Rule 5610 *requires* all issuers to "adopt" a "code of conduct" and make it "publicly available."
Plaintiffs cannot get around the consistent case law in this Circuit holding similar policy statements
not actionable in the face of allegations of undisclosed employee misconduct.  (Def. Br. 14–16.)

failures were insufficient because the Iraq-related conduct already had transpired, and Defendants'
statements caused investors to believe Ericsson's controls were "functioning properly." (Opp. 13
& n.9.) Plaintiff, however, ignores that neither the DOJ nor SEC had charged Ericsson or its
employees with violating any law in Iraq. (*See* Exs. 39, 50.) Ericsson kept investors apprised of
the status of the DOJ and SEC investigations and repeatedly cautioned that "we cannot assure that
violations do not occur," including violations of the FCPA.[5] (*See* Def. Br. 7–8; Ex. 1.) In short,
Ericsson's statements "suggest[ed] caution (rather than confidence) regarding the extent of [its]
compliance." *Singh*, 918 F.3d at 64.

### C. The Opposition Confirms the FCPA Settlement Statements Were Not False.

Plaintiff identifies no aspect of the FCPA Settlement Statements that was false or
misleading. Plaintiff cites Mr. Ekholm's statements that the DPA "marks the end of the FCPA-
related investigations" and "puts an end to a long and wide-ranging process." (Opp. 14.) Plaintiff
argues that optimistic statements like "we're now finally able to move forward" (Compl. ¶ 222)
and references to the Company's controls enhancements assured investors "that Ericsson was not
at risk of any further DOJ investigations." (Opp. 14–15.) Not so. In fact, both before ***and*** after
entering into the DPA, Ericsson expressly warned investors that "there can be no assurance that
Ericsson is or will be compliant with all relevant regulations at all times" and "could experience
penalties and adverse rulings in enforcement or other proceedings." (*E.g.*, Ex. 45 at 57–68; *see*
Ex. 1.) Tellingly, Plaintiff ignores the multiple decisions (*see* Def. Br. 16–17) holding that similar
statements of general corporate optimism, such as "the distractions that we had to overcome earlier

---

[5] In brushing over these cautions, Plaintiff ignores the "important difference" between
"announcing rules forbidding bribery," which Ericsson did, and "representing that no officer has
engaged in forbidden conduct," *Braskem*, 246 F. Supp. 3d at 756, which Ericsson did not.

this year are now behind us," are not actionable.  *City of Warwick Mun. Emps. Pension Fund* v. *Rackspace Hosting, Inc.*, 2019 WL 452051, at *5 (S.D.N.Y. Feb. 5, 2019).[6]

Plaintiff also points to Mr. Dedullen's statement that "[w]e are not aware of any other follow-on investigations in any of the other countries."  (AC ¶ 224.)  Plaintiff asserts (Opp. 14) this statement was false because of Ericsson's internal investigation into business practices in Iraq, concluded shortly *after* the statement, which "could not identify that any Ericsson employee was directly involved in financing terrorist organizations." (Ex. 46 at 2.) Mr. Dedullen's statement responded to an analyst asking "whether ***other investigations in other regions*** around the same topics might kick off," and "whether . . . you've had any kind of discussion with ***the regulators***." (Ex. 40 at 6 (emphasis added).)  After Mr. Dedullen responded, the analyst asked two follow-up questions, which concerned "the 2 investigations" resolved with the DOJ and SEC and "countries where you haven't . . . faced criminal . . . investigational charges."  (Ex. 40 at 6–7.)  Plaintiff cannot plead falsity by excerpting one snippet without the context that the question specifically concerned U.S. and non-U.S. "regulators," not internal investigations.

## II. THE OPPOSITION CONFIRMS THAT PLAINTIFF'S ALLEGATIONS DO NOT SUPPORT A STRONG INFERENCE OF SCIENTER.

Because Plaintiff admittedly does not allege that any Defendant had any "[m]otive" to commit fraud (Opp. 17 n.10), Plaintiff faces a "'correspondingly greater'" burden to plead the "'conscious misbehavior'" or "'a state of mind approximating actual intent'" of each Individual Defendant, which is necessary to impute scienter to Ericsson.  *Francisco* v. *Abengoa, S.A.*, 2022

---

[6] Defendants provided no assurances similar to those in *In re Vivendi Universal, S.A. Securities Litigation* (*see* Opp. 16), where the company made specific statements concerning its "cash flow and debt," "suggest[ing] that [it] faced no liquidity risk," when in fact it was "strapped for cash." 838 F.3d 223, 232, 251 (2d Cir. 2016).  Nor did Defendants provide assurances comparable to the specific descriptions of "pollution-preventing equipment and 24-hour monitoring teams" alleged to be false in *Meyer* v. *Jinkosolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014) (Opp. 16).

WL 3902852, at *23, *26 (S.D.N.Y. Aug. 30, 2022). Plaintiff's allegations fail to do so.

A.  **The Supposed "Importance" and Risks of Ericsson's Iraq Business.**

Plaintiff effectively abandons its attempt to plead scienter under the narrow "core operations" doctrine, relegating to a footnote that Iraq was "a unique growth opportunity" (Opp. 23 n.13), not a core operation. *See Das* v. *Rio Tinto PLC*, 332 F. Supp. 3d 786, 816 (S.D.N.Y. 2018) (doctrine "'typically applies only'" where operation "'constitutes nearly all of a company's business'"). Plaintiff speculates that because Ericsson was operating in "ISIS-controlled Iraq," "Defendants knew or were reckless in not knowing" of "corrupt practices and the funding of terrorists." (Opp. 21.) Many companies assist in rebuilding war-torn regions and employees routinely raise concerns about "life-threatening dangers" in those countries. (Opp. 22.) But Plaintiff's "general allegation[s]" that Ericsson operated in a country with "reported corruption comes nowhere close to establishing" that Defendants "were specifically put on notice" of improper payments. *Menora Mivtachim*, 2021 WL 1199035, at *25. By contrast, in *VEON* (*see* Opp. 22), the board actually approved the "initiating bribe." 2017 WL 4162342, at *11.[7]

B.  **"Confidential Witnesses."**  Whether or not Plaintiff described its "confidential witnesses" with "sufficient particularity" (Opp. 20), neither "witness" alleges any particularized facts supporting an inference that any Individual Defendant knew of purported improper payments in Iraq. According to "CW 1," "Ericsson had a database for contracts payments." (Opp. 20.) But that says nothing about whether any improper payment was reflected in that database, whether any Individual Defendant accessed it, or whether any Individual

---

[7] Plaintiff's allegation that Ericsson paid a ransom to free an employee of a contractor, even if credited, is not a "decision[] to engage with terrorists" or "violation of the FCPA" (Opp. 23) because "payments made in response to imminent threats to health or safety do not violate the FCPA." (Ex. 57 (DOJ and SEC FCPA Resource Guide).)

Defendant knew of improper payments. "CW 2's" conclusory claims that Ericsson's former "Head of Global Customer for the Middle East" "regularly engaged in corrupt practices" (AC ¶ 11; Opp. 21) do not bear on any Individual Defendant's knowledge, particularly given that "CW 2" does not allege that any Individual Defendant knew of such conduct.

### C.    The DPA, Government Investigations and Internal Investigation.

Plaintiff asserts that scienter can be inferred because the Individual Defendants held "senior executive positions" when Ericsson entered into the DPA. (Opp. 19.) But *In re Electrobras Securities Litigation*, 245 F. Supp. 3d 450 (S.D.N.Y. 2017), on which Plaintiff relies, supports the opposite conclusion. There, the court *dismissed* claims against the former CEO because "'general allegations regarding . . . the organizational role of a defendant'" is insufficient to plead scienter. *Id*. at 467. By contrast, the complaint was upheld against lower-level officers based on more specific scienter allegations, absent here, such as receipt of an internal audit report notifying the officers "that the company lacks controls." *Id.* at 468.

Although not alleged in the Complaint, Plaintiff claims that "[t]he initiation of the DOJ and SEC investigations in 2016" infers scienter. (Opp. 18.)[8] But investigations involving countries *other than Iraq* do not support the inference that the Individual Defendants knew of misconduct in Iraq. Plaintiff also identifies no specific information that any Individual Defendant learned from the Company's internal investigation of conduct in Iraq that rendered their statements false. (Opp. 18.) In fact, the internal investigation "could not determine the ultimate recipients" of allegedly wrongful payments in Iraq, nor could it "identify that any Ericsson employee was directly involved" in making such payments. (Ex. 46 at 2; *see* Compl. ¶ 45.) Plaintiff does not

---

[8] *See Amaya* v. *Ballyshear LLC*, 295 F. Supp. 3d 204, 229 (E.D.N.Y. 2018) ("'[A] party is not entitled to amend its complaint through statements made in motion papers.'").

dispute that Ericsson's efforts to investigate noncompliance "'tend[] to undermine any inference of scienter,'" *Salim* v. *Mobile Telesys., PJSC*, 2021 WL 796088, at *14 (E.D.N.Y. Mar. 1, 2021), and the DOJ itself has recognized that "Ericsson leadership" directed the Company's external counsel to disclose to the DOJ its investigation of Iraq conduct (Ex. 53 at A-1-8).  In any event, the DOJ has not charged Ericsson with violating any law in Iraq.  (*See* Exs. 53–55.)

> **D.**    ***Mischaracterization of Mr. Ekholm's Statements.***  On February 15, 2022, the day the Company issued a press release concerning the inconclusive findings of its internal Iraq investigation, CEO Ekholm publicly stated that "[t]he materiality of our findings did not pass our threshold to make a disclosure," and "[t]hat was our judgment when we completed the investigation two years ago."  (Ex. 51 at 1.)  Plaintiff claims this shows his "knowledge of the underlying conduct" and "conscious decision to not disclose." (Opp. 17.)  Mr. Ekholm's statement *in 2022* merely explained the Company's rationale *in 2019* for certain disclosure decisions under applicable Swedish investor disclosure laws and rules.

*     *     *

> "Viewed holistically" (Opp. 23), the Complaint merely aggregates deficient theories and does not meet Plaintiff's burden to plead a "strong inference of scienter." *Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*, 551 U.S. 308, 323 (2007).  The more "cogent and compelling" inference is that the Individual Defendants made good faith disclosures to investors based on their understanding of complex and evolving information about Ericsson's risk of further corruption investigations. *Id.* at 324.

**CONCLUSION**

> The Amended Complaint should be dismissed with prejudice.  Because Plaintiff "identifie[s] no additional facts or legal theories" that it "might assert if given leave," *UBS*, 752 F.3d at 188, leave to amend should not be granted.

Respectfully submitted,

/s/ *Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.
David M.J. Rein
Jacob G. Singer
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Tel:  212-558-4000
Fax:  212-558-3558
giuffrar@sullcrom.com
reind@sullcrom.com
singerja@sullcrom.com

*Counsel for Defendants Telefonaktiebolaget*
*LM Ericsson, Börje Ekholm, Carl Mellander,*
*and Xavier Dedullen*

March 10, 2023